**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CYNTHIA BALL,

                    Plaintiff,

             v.

MARRIOTT INTERNATIONAL, INC.,

                  Defendant.

Civil Action No.: 1:19-CV-10593

---

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

Keya C. Denner, Esq.
Timothy M. Barbetta, Esq.
FORD HARRISON LLP
*Attorneys for Defendant*
300 Connell Drive, Suite 4100
Berkeley Heights, New Jersey 07922
Tel: (973) 646-7308
Fax: (973) 646-7301

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL ARGUMENT ............................................................................................. 3

I.   THE FACTS DO NOT SUPPORT PLAINTIFF'S TITLE VII HOSTILE WORK
ENVIRONMENT CLAIM .............................................................................. 3

     A.   Plaintiff Cannot Show a Continuing Violation Because the Events That Occurred
Prior to April 30, 2017 are Completely Unrelated to the Events of September, 2017.
........................................................................................................ 3

     B.   The Conduct in September, 2017 Was Not Severe or Pervasive............................. 5

     C.   The Record Evidence Establishes that the Patron's Acts Cannot be Imputed Upon
The Hotel. ...................................................................................... 10

II.  PLAINTIFF'S TITLE VII RETALIATION CLAIM SHOULD BE DISMISSED........... 16

     A.   Plaintiff has Failed to Make a *Prima Facie* Claim of Retaliation Under Title VII. 16

         1.   Plaintiff did not Engage in Protected Activity ................................... 16

         2.   Plaintiff Cannot Demonstrate Causation ......................................... 18

     B.   Plaintiff Cannot Demonstrate Pretext. ................................................ 19

i

## TABLE OF AUTHORITIES

**Cases**

*Nat'l R.R. Passenger Corp.*, 536 U.S. at 122 ............................................................................. 5

159 F.3d at 768 ........................................................................................................................... 8

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 469–70 (2d Cir. 2001) ......................... 23

*Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 103–04 (2d Cir. 2020) ........................ 7

*Agosto*, 982 F.3d at 103 ............................................................................................................ 10

*Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir. 1998)............................................ 3

*Batista v. Waldorf Astoria*, No. 13 CIV. 3226 LGS, 2015 WL 4402590, at *6 (S.D.N.Y. July 20, 2015) ......................................................................................................................................... 4

B*raham v. N.Y. Unified Court System*, No. 94 Civ. 2193, 1998 WL 107117, at *3 (S.D.N.Y. Mar. 11, 1998) ................................................................................................................................. 20

*Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577-78 (2d Cir. 1989).......................... 6

*Cf. Katzev v. Retail Brand All., Inc.*, 2010 WL 2836159, at *4 (S.D.N.Y. July 7, 2010) ........... 14

*Cf. Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 439 (2d Cir. 1999)9

*Collins v. Christopher*, 48 F. Supp. 2d 397, 406–07 (S.D.N.Y. 1999)......................................... 4

*Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994)............................................................... 3

*Cruz*............................................................................................................................................ 8, 9

*Cruz v. Coach*, 202 F.3d 560 (2d Cir. 2000)................................................................................. 7

*Dauber v. Bd. of Educ. of City of New York*, No. 99 CIV. 3931 (LMM), 2001 WL 1246581, at *5–6 (S.D.N.Y. Oct. 18, 2001) .................................................................................................. 4

*Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) ................................................ 7

*Flower* ....................................................................................................................................... 14

*Flower v. Mayfair Joint Venture*, No. 95 CIV. 1744 (DAB), 2000 WL 272187 (S.D.N.Y. Mar. 13, 2000) ................................................................................................................................... 12

*Flower*, 2000 WL 272187 at *10.............................................................................................. 20

*Flower*, 2000 WL 272187 at *9................................................................................................ 17

*Folkerson v. Circus Circus Enterprises, Inc.*, 107 F.3d 754, 756 (9th Cir. 1997)...................... 20

*Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 69 (S.D.N.Y. 2002).......................................... 4

*Heskin v. Insite Advertising, Inc.*, No. 03 Civ.2598 GBD AJP, 2005 WL 407646 (S.D.N.Y. Feb. 22, 2005) ................................................................................................................................... 25

*Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) ......................................................................................................................................... 18

*Leifer v. N.Y. State Div. of Parole*, 391 F. App'x 32, 34 (2d Cir. 2010) ...................................... 23

*Melendez v. Cty. of Westchester*, No. 17-CV-9637 (NSR), 2021 WL 467085, at *10 (S.D.N.Y. Feb. 8, 2021) ............................................................................................................................. 18

*Melendez*, 2021 WL 467085, at *10 ......................................................................................... 19

*Melendez*, 2021 WL 467085, at *11 ......................................................................................... 20

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)................................................. 5, 6

*Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 213, 230 (2d Cir. 2004)................................. 7

*Quinn*......................................................................................................................................... 8, 9

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) ......................................... 3

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) ......................................... 6

*Quinn*, 159 F.3d at 767 .............................................................................................................. 11

*Ragin v. E. Rampapo Cent. Sch. Dist.,* No. 05 CIV. 6496 (PGG), 2010 WL 1326779, at *31 (S.D.N.Y. Mar. 31, 2010) ............................................................................................ 21

*Ragin v. E. Rampapo Cent. Sch. Dist.,* No. 05 CIV. 6496 (PGG), 2010 WL 1326779, at *31 (S.D.N.Y. Mar. 31, 2010), aff'd, 417 F. App'x 81 (2d Cir. 2011) ........................................ 21

*Reeves v. Sanderson Plumbing Prods., Inc.* .................................................................. 25

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) ............................. 23

*Salas v. N.Y.C. Dep't of Investigation,* 298 F. Supp. 3d 676, 686 (S.D.N.Y. 2018) ............ 19

*Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir. 2000) ................................................... 23

*Silverman v. City of New York,* 64 F. App'x 799, 800–01 (2d Cir. 2003) ........................... 23

*Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001) ......................................................................................................................... 21

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 519 (1993) .......................................... 23

*Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000) ......................................... 10

*Wimmer v. Suffolk Cty. Police Dep't,* 176 F.3d 125, 135 (2d Cir. 1999) ........................... 19

*Wimmer,* 176 F.3d at 135 ............................................................................................ 19

*Yarde v. Good Samaritan Hosp.,* 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ..................... 22

**Other Authorities**

159 F.3d at 766, *citing* 29 C.F.R. § 1604.11(e) ........................................................... 10

202 F.3d at 572 .......................................................................................................... 8

Opp. Brief ................................................................................................... 4, 13,18, 20

*Point I.C.,* supra ....................................................................................................... 18

**Rules**

*Fed. R. Civ. P.* 56(c)(1)(A) ......................................................................................... 9

## PRELIMINARY STATEMENT

Plaintiff Cynthia Ball's ("Plaintiff") submission in opposition to Defendant Marriott International, Inc.'s ("Defendant", "Marriott", or the "Hotel") motion for summary judgment leaves no doubt that her Title VII hostile work environment and retaliation claims are ripe for dismissal. The undisputed record evidence demonstrates Plaintiff's hostile work environment claim is based on unrelated incidents that do not arise to the level of actionable conduct. These incidents all involve isolated conduct of bar patrons – not Plaintiff's co-workers or supervisors – and Plaintiff fails to articulate or identify any discriminatory Hotel policy that can be tied to the patrons' actions.

With respect to the main incident about which Plaintiff complains, the surveillance video submitted to the Court with Defendant's motion demonstrates a patron collided with Plaintiff as he was leaving the bar. In doing so, his right hand touched Plaintiff's buttocks for about one second. The video shows the bartender, Mr. Franzo, looking at Plaintiff and the patron as the collision occurs. The video also captures the events right after the collision. Plaintiff has no physical reaction, and she takes no steps to point out the patron to the bartender, her supervisor, or anyone else. In her opposition, Plaintiff admits that she never told anyone to alert security, and she never identified the patron to anyone before she left the bar for the cafeteria. Thus, the record is clear that Plaintiff's inaction prevented Defendant from removing the patron, or taking any other action, while he remained at the bar.

When Plaintiff finally did report the incident, Plaintiff admits the Hotel performed an investigation by interviewing several employees that very night, including Mr. Franzo, who did not confirm Plaintiff's assertion that the patron had sexually assaulted her. Plaintiff admits that Human Resources contacted Plaintiff the next day to keep her abreast of the investigation, and

allowed her to take time off to recover from the incident. When she returned to work, Plaintiff admits she met with the Hotel Manager, her union representative, and Human Resources to review the surveillance video, a copy of which was provided to her union representative. Plaintiff further admits that the Hotel installed panic buttons as a result of her complaint.

In the face of these undisputed facts, Plaintiff asserts that the video's quality does not allow the Court to determine whether the collision was accidental or intentional, and whether the patron's fingers went in between Plaintiff's buttocks. Ultimately, however, whether Defendant can be held liable for the actions of the patron depends on the reasonableness of the Hotel's response. In this respect, there is ample evidence in the record demonstrating that Defendant performed an investigation, which included viewing the surveillance video and gathering the statement of the only eye-witness to the collision. Under governing precedent, therefore, Defendant's response was sufficient to avoid liability.

Plaintiff's several admissions also doom her retaliation claim. She admits the Hotel created a written test to determine who would be the new bartender. She also admits a whole new slate of upper management were involved in choosing the bartender, and the only link to her prior complaint had left the Hotel before the new bartender was hired. This completely cuts off causation. Plaintiff offers no additional evidence of retaliation besides temporal proximity, which – at ten months – is far too long to infer a retaliatory motive.

Based upon the robust factual record developed on this motion, and as discussed in more detail below, no reasonable jury could find in favor of Plaintiff on her hostile work environment or retaliation claims. Accordingly, Defendant respectfully requests this Court to enter summary judgment in its favor, dismissing Plaintiff's complaint in its entirety with prejudice.

## LEGAL ARGUMENT

**I.    THE FACTS DO NOT SUPPORT PLAINTIFF'S TITLE VII HOSTILE WORK ENVIRONMENT CLAIM**

### A.    Plaintiff Cannot Show a Continuing Violation Because the Events That Occurred Prior to April 30, 2017 are Completely Unrelated to the Events of September, 2017.

As Plaintiff admits in her opposition, she relies on several events which occurred between 2010 and April 30, 2017 in support of her hostile work environment claim, which are beyond the 300 day statute of limitations. Plaintiff, however, asserts these events should be considered as part of a "continuing violation" under Title VII. The evidence in the record does not support this.

The continuing violation doctrine "extends the limitations period for all claims of discriminatory acts committed *under an ongoing policy of discrimination* even if those acts, standing alone, would have been barred by the statute of limitations." *Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir. 1998) (emphasis added). A continuing violation is only found "where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," neither of which are present here. *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). Although Plaintiff baldly claims the time-barred events "evidence Defendant's ongoing policy of permitting Ball to be sexually harassed," Plaintiff points to *no such policy* in the record or in her opposition. In fact, Plaintiff has not established that Defendant has any discriminatory policies or practices necessary for the continuing violations doctrine.

Notably, this Court has repeatedly declined to apply the continuing violations doctrine

3

when the "sets of events involved different actors and are remote in time to each other." *See Batista v. Waldorf Astoria*, No. 13 CIV. 3226 LGS, 2015 WL 4402590, at *6 (S.D.N.Y. July 20, 2015) (finding that the doctrine did not apply when the events were two years apart, not motivated by any discriminatory animus, and perpetrated by different actors); *see also Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 69 (S.D.N.Y. 2002) (finding that the doctrine did not apply when the plaintiff alleged "discrete, unrelated claims of discriminatory treatment by different managers"); *Dauber v. Bd. of Educ. of City of New York*, No. 99 CIV. 3931 (LMM), 2001 WL 1246581, at *5–6 (S.D.N.Y. Oct. 18, 2001) (refusing to apply the doctrine when the plaintiff's "acts alleged were perpetuated by different actors, different in kind, and motivated by different reasons."); and *Collins v. Christopher*, 48 F. Supp. 2d 397, 406–07 (S.D.N.Y. 1999) (not applying the doctrine where the plaintiff failed to show "that the alleged events were close enough in time, or otherwise related" and "perpetrated by different actors in different divisions."). Virtually all of the persons involved in the alleged October 2016 incident (including the offending guest, the bartender, Plaintiff's manager, and the Director of Human Resources Operations) are different from those involved in the September 2017 incident. There can be no reasonable argument that the October 2016 event is not a discrete, unrelated claim by different actors.

Plaintiff's reliance on the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) is misplaced.  Although Plaintiff points out that the Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for purposes of assessing liability, so long as any act contributing to that hostile work environment takes place within the statutory period," *see* Opp. Brief, p. 10, the Supreme Court's holding does not apply to discrete acts of discrimination, *Nat'l R.R. Passenger Corp.*, 536 U.S. at 122.  Indeed, the Supreme Court made

clear that the allegations making up the hostile work environment claim must be continuing acts that are "part of the same unlawful employment practice." *Id.* at 122. As set forth above, Plaintiff fails to identify any unlawful employment practice and her allegations are discrete, separate acts of discrimination by random bar patrons.

Accordingly, the continuing violation doctrine is not applicable and Plaintiff's allegations from 2010 to April 30, 2017 are time barred. Moreover, the Court should decline to consider these time barred allegations in support of her argument that the events in September, 2017 established a hostile work environment under Title VII.

### B.   The Conduct in September, 2017 Was Not Severe or Pervasive.

Once the time-barred incident in 2016 is removed from consideration, the only timely incidents that are capable of contributing to Plaintiff's hostile work environment claim are the incidents occurring on September 10, 2017, and September 18, 2017. Affording Plaintiff all reasonable inferences, the evidence in support of her hostile work environment claim is as follows:

- On September 10, 2017, Plaintiff was waiting on a table with two women and two men. Plaintiff heard the two men cough into their hands the word "pussy" when she walked by. One of the men poked her in the chest when asking for more alcohol and the check.

- On September 18, 2017, a different bar patron "grabbed" her right buttocks, and she felt his "fingers go between [her] buttocks."

As noted in Defendant's moving brief, it is well settled that "isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998), *abrogated on other grounds*

by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *see also Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577-78 (2d Cir. 1989) (to be actionable, the alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive"). "Although a single incident can create a hostile work environment, the incident must have been 'extraordinarily severe' and therefore this standard is reserved only for the most egregious conduct." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 103–04 (2d Cir. 2020). The Second Circuit has found "this standard was met when a plaintiff was raped, or was punched in the ribs, temporarily blinded by having mace sprayed in his eyes, and covered ... with shaving cream all while being subjected to racially offensive comments." *Id.* (internal quotations and citation omitted) (citing *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) and *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 213, 230 (2d Cir. 2004)).

Plaintiff relies primarily upon *Cruz v. Coach*, 202 F.3d 560 (2d Cir. 2000) in her opposition brief to support her claim that the patrons' actions on September 10th and September 18th were sufficient to constitute a hostile work environment. In *Cruz*, the plaintiff alleged that her supervisor "repeatedly would make 'loud racial comment[s]' – including use of the word 'nigger' – during [plaintiff's] daily trips to the mailroom." *Id.* at 570. Another employee testified that the same supervisor "constantly made racially derogatory remarks, including references to 'spics' and 'Colored People's Time." *Id.* at 571. A third witness submitted an affidavit asserting that the supervisor repeatedly made remarks such as, "the only other job you [Hispanic] people can do is sweep the floors in McDonald's." Moreover, the plaintiff testified that this supervisor made comments about women, would "look[ ] at [them] up and down in a way that's very uncomfortable," and would "move increasingly close to" plaintiff when talking to her such that she was cornered against the wall. Given this evidence, the Second Circuit concluded that plaintiff

had "adduced evidence that [the supervisor] in fact subjected her and others to blatant racial epithets on a regular if not constant basis," and, therefore, overturned the district court's grant of summary judgment in favor of the employer.

By contrast, in *Quinn*, which Plaintiff cited in her opposition brief, the Second Circuit found insufficient evidence of a hostile work environment under Title VII, and, therefore, affirmed the District Court's entry of summary judgment in favor of the employer on this claim. There, the plaintiff alleged that her immediate supervisor 1) told her she had been voted the "sleekest ass" in the office, and 2) on occasion, "deliberately touched [her] breasts with some papers that he was holding in his hand." 159 F.3d at 768. Accepting these allegations as true, the Second Circuit held that plaintiff failed to adduce sufficient evidence to support a hostile work environment claim, reasoning that although the two incidents are "obviously offensive and inappropriate, they are sufficiently isolated and discrete that a trier of fact could not reasonable conclude that they pervaded [plaintiff's] work environment." *Id.*

The record evidence in this case is a far cry from the evidence in *Cruz*, and is more akin to the non-actionable conduct in *Quinn*. First, unlike in *Cruz*, the alleged acts in this case were committed by different customers, and the events were isolated and completely unrelated. Second, unlike the blatantly racial slurs used by the supervisor in *Cruz*, coughing the word "pussy" into one's hand – with no other sexual connotation surrounding the outburst[1] – is not the type of offensive utterance that courts consider capable of creating a hostile work environment. *Cf. Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 439 (2d Cir. 1999) ("Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive

---

[1] Plaintiff asserts these comments were "sexually charged," but there is nothing in the record to indicate that the patron's comments were directed at Plaintiff because of her gender or were otherwise made with any sexual connotation.

working environment' than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates."). On the other hand, in *Quinn*, the plaintiff's supervisor commented directly about plaintiff's "sleek ass," which the court found non-actionable. Third, the alleged "sexual assault" in this case was an isolated event, whereas the supervisor in *Cruz* "repeatedly" backed the plaintiff into a wall in a threatening manner (the court, in fact, noted that this repeated conduct "brings this case over the line separating merely offensive or boorish conduct from actionable sexual harassment", 202 F.3d at 572). Fourth, the video evidence in this case provides a stark contrast to Plaintiff's claim of "sexual assault."

The existence of video evidence makes this case the exception to the norm, as video of the incident in dispute does not exist in most sexual harassment cases. In fact, none of the reported decisions cited by the parties involve video evidence. While Plaintiff uses the term "sexual assault" to describe the event, the Court is not required to assume the existence of facts that are not supported by the video evidence.

Plaintiff tries to minimize the impact of the video by claiming that it is "not of quality to determine whether…[Plaintiff's] right buttock was squeezed or that her assailant's fingers went in between her buttocks." Opp. Brief, p. 13. Defendant disagrees. Although the video is not captured in "high definition," it demonstrates, among other things, that: 1) as the patron is turning to leave the bar, he is not looking in Plaintiff's direction or at her backside – instead he is looking away from her backside; 2) while he is looking in the opposite direction, his right hand whirls around and with an open hand it comes into contact with Plaintiff's backside; and 3) the touch lasts no longer than one second. In short, the video is strong evidence that this was an accidental collision between the patron and Plaintiff – a scenario that Plaintiff, herself, admits is not a reportable event. *See* Plaintiff's Counterstatement of Undisputed Facts ("Counterstatement"), ¶ 98. When compared

with the non-actionable conduct in *Quinn* – where the plaintiff's supervisor *intentionally* used an object to touch her breasts on several occasions – the conclusion must be that the record evidence cannot support the existence of a hostile work environment.

The video also demonstrates the bartender, Dominick Franzo, looking and pointing at Plaintiff and the patron as the collision occurs. Franzo's written statement does not support Plaintiff's story that the patron squeezed her buttocks from behind and put his fingers in between her legs. Plaintiff cannot dispute this, but instead claims that "Franzo's view was obstructed by the bar." Plaintiff's denial, however, is not supported by any record evidence. *See Fed. R. Civ. P.* 56(c)(1)(A) (noting that the party opposing summary judgment must cite to "particular parts of materials" that are "in the record"); *Agosto*, 982 F.3d at 103 (refusing to consider plaintiff's argument in opposition to summary judgment for which there was no citation to the record); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (holding that "unsupported allegations do not create a material issue of fact").

Finally, Plaintiff's own admitted expressions of doubt bolster the conclusion that the event captured on the video and described by Franzo was an accidental collision. Despite Plaintiff's claim that her mindset and inconsistent actions should not be considered by the Court, Plaintiff's subjective perception of the incident is part of the *prima facie* case she must prove in order to survive summary judgment. Right after the event occurred, she admits to doubting whether she was overreacting. Counterstatement, ¶ 56. She admits to having no physical reaction whatsoever. Counterstatement, ¶ 45. She admits to not asking the bartender or her supervisor to call security (which she had done on other occasions in the past when she had issues with a customer). Counterstatement, ¶¶ 53-55. She admits she did not identify the patron to anyone before the patron left the bar. Counterstatement, ¶ 60. She admits she did not follow up with her union or the police

to pursue sexual assault charges. Counterstatement, ¶¶ 91, 95. She admits to emailing her friends and openly questioning whether the event happened as she re-told it in her lawsuit. Counterstatement, ¶ 97.

"Whether an environment is 'hostile' or 'abusive' depends on the totality of the circumstances." *Quinn*, 159 F.3d at 767. Here, the totality of the circumstances – including the video, the statement of the only eye-witness, and Plaintiff's own candid admissions – do not support the existence of a hostile work environment, and Defendant's motion for summary judgment, therefore, should be granted.

**C.**  **The Record Evidence Establishes that the Patron's Acts Cannot be Imputed Upon The Hotel.**

Even if the incidents described by Plaintiff are sufficiently severe as to constitute a hostile work environment, the conduct must be imputed to Marriott in order for Plaintiff's Title VII claim to succeed.  In *Quinn*, the Second Circuit came short of deciding "the precise contours of the duty, if any, that employers owe to employees who are subjected to harassment by outsiders such as customers," but noted that "such a duty can be no greater than that owed with respect to co-worker harassment." 159 F.3d at 766, *citing* 29 C.F.R. § 1604.11(e) ("An employer *may also be responsible* for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer ... knows or should have known of the conduct and fails to take immediate and appropriate corrective action. *In reviewing these cases the [EEOC] will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.*) (emphasis added in circuit opinion). Viewed in this light, the Second Circuit agreed with the District Court that the plaintiff had "failed to adduce evidence tending to show that [the employer] either failed to provide a reasonable complaint procedure or that it knew of her harassment (either by co-workers or customers) and

failed to take any action," and, therefore, upheld the trial court's refusal to consider allegations regarding the conduct of the employer's customers. *Id.* at 767.

In *Flower v. Mayfair Joint Venture*, No. 95 CIV. 1744 (DAB), 2000 WL 272187 (S.D.N.Y. Mar. 13, 2000), this court was faced with strikingly similar facts as those alleged by Plaintiff in this case. The plaintiff in *Flower* worked at the defendant hotel as an Assistant Food and Beverage Manager. She alleged that while she was on duty one evening, she was sexually assaulted by one of the hotel's permanent guests. The plaintiff testified that, among other things, the guest grabbed her breasts and placed her hands on his genitals. 2000 WL 272187, at *1. After the alleged assault, the plaintiff's manager met with her to discuss what happened and to document the incident. *Id.* Plaintiff then met with the Hotel Manager, who advised the plaintiff not to talk to, wait on, or associate with the guest. *Id.* As part of its investigation, management also spoke with two employees about the incident. *Id.* The Hotel's Managing Director also spoke to the guest about the assault, but the guest was not warned about his conduct and was not banned from staying at the hotel. *Id.* at *9. The plaintiff did not wait on the guest again, and was not harassed by any other hotel guest or employee during the remainder of her employment. *Id.* at *1. The hotel fired the plaintiff about five months after the assault for insubordination and improper conduct. Plaintiff sued the hotel, alleging a hostile work environment and retaliation under Title VII, state and city law.

In considering the hotel's motion for summary judgment, the court relied on *Quinn* for guidance as to whether the guest's conduct could be imputed to the hotel, noting the hotel "generally [will] not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it." The court further observed that in the context of a guest at a hotel, "[c]learly, the lack of control and ongoing nature of the contact

between customer and employee distinguishes a non-employee harassment situation from the constant contact and employer control that exists in the employee/employee sexual harassment situation." *Id.* at \*9.

Turing to the facts before it, the court in *Flower* held that the plaintiff could not impute the guest's sexual assault upon the hotel, because the record evidence demonstrated that the hotel had responded to the incident. In support of this conclusion, the court observed that the plaintiff's supervisors responded to the sexual assault by meeting with the plaintiff and interviewing at least two employees. *Id.* at \*9. The record also revealed that senior management spoke to the assailant (who still lived at the hotel), and directed the plaintiff to stay away from the guest and not to wait on him again. *Id.* The court further noted that the plaintiff admitted she was not harassed by a hotel guest or employee during the remainder of her employment. Moreover, the court explicitly rejected plaintiff's rebuttal that the hotel failed to take remedial action because it did not warn the guest that his behavior would not be tolerated and because it did not ban him from the Hotel, finding that the plaintiff cited to "no authority for her proposition that Title VII requires her employer to ban a customer from its premises." *Id.*

Here, as in *Flower*, Plaintiff alleges she was assaulted by a guest, not a co-employee or a supervisor. Unlike co-employees and supervisors, Defendant has limited control over the conduct of guests in a bar. *Cf. Katzev v. Retail Brand All., Inc.*, 2010 WL 2836159, at \*4 (S.D.N.Y. July 7, 2010) (noting that there was no evidence that the defendant had any control over or permitted an anonymous caller to make the offending calls to plaintiff, and, therefore, holding that the plaintiff failed to frame any genuine issue of fact as to a hostile work environment based on sex under federal, state or city law).  Thus, the Hotel can only be liable for the guest's conduct where it either did not provide a reasonable avenue of complaint or knew of the harassment but did nothing about

it. The record clearly demonstrates Defendant provides its employees several ways to complain about harassment (including reporting to local Human Resources, the General Manager, an area or regional Human Resources representative, a member of corporate Human Resources, emailing www.HOTethics.com, calling the employee 800 Hotline, or contacting the Office of the General Counsel) which Plaintiff utilized in the past. *See* Supplemental Declaration of Keya C. Denner, Esq., Ex. 1.[2] Accordingly, Plaintiff can only defeat Defendant's motion for summary judgment if she points to evidence that Defendant did nothing about her complaint.

As argued in Defendant's moving brief, the undisputed record evidence demonstrates that Defendant's response was reasonable under the totality of the circumstances. In her opposition, Plaintiff admits – as she must – to the following facts with respect to the September 18, 2017 incident:

- Plaintiff admits she had no physical reaction immediately after the incident. *See* Counterstatement, ¶ 45.

- After pausing for a second, Plaintiff admits she exited the bar area through the rear exit to speak with her supervisor, Kerry Davis. Counterstatement, ¶ 46.

- Plaintiff admits Ms. Davis did not witness the alleged touching. Counterstatement, ¶ 48.

- Plaintiff admits while she was speaking to Ms. Davis, the man remained in the bar area. Counterstatement, ¶ 51.

- Plaintiff admits Ms. Davis thought that the guest had already left at the time Plaintiff came to speak to her. Counterstatement, ¶ 73.

- Plaintiff admits that while she was speaking to Ms. Davis, she did not point or

---

[2] Although Plaintiff asserts Defendant did not have "a policy or procedure in place in [sic] a worker made a complaint that a guest behaved inappropriately in a sexual manner," Counterstatement, ¶ 1, Defendant's anti-harassment policy clearly applies to clients: "[Defendant] also expects that all of the vendors, independent contractors and clients whose conduct may occur at our workplaces or impact our workplaces shall comply with this policy…" Supp. Denner Decl, Ex. 1, document Bate Stamped 000021. Moreover, Plaintiff admits to having received this policy, understanding it, and having received training on it. Counterstatement, ¶¶ 8-13.

gesture towards the patron to identify him to Ms. Davis, even though he was still inside the bar. Counterstatement, ¶ 81.

• Plaintiff admits that she did not point the man out to Ms. Davis or anyone else before the man left the bar. Counterstatement, ¶ 60.

• Plaintiff admits that she did not ask Ms. Davis, Mr. Franzo, or anyone else to call security while the man remained at the bar. Counterstatement, ¶ 53-55.

• Plaintiff admits Ms. Davis asked her what she wanted to do, and suggested she get some air. Counterstatement, ¶ 50.

• Plaintiff admits that after she reported the incident to Security Officer Allen Israel, he "automatically encouraged [her] to write a report." Counterstatement, ¶ 64.

• Plaintiff admits Officer Israel immediately alerted Security Manager Jim Reyes, who asked Plaintiff if she wanted to go to the hospital, but she declined. Counterstatement, ¶¶ 66-67.

• Plaintiff admits Officer Israel had Plaintiff write her statement down on an "Associate Statement" form, dated September 18, 2017. Counterstatement, ¶¶ 68-69.

• Plaintiff admits Officer Israel and Officer Reyes proceeded to get statements from Ms. Davis, Mr. Franzo and Officer Israel that very same night. Counterstatement, ¶ 70.

• Plaintiff admits Mr. Franzo's written statement did not substantiate Plaintiff's allegations that the guest came from behind her and grabbed her between her legs. Counterstatement, ¶¶ 71-72.

• Plaintiff admits Defendant reviewed video surveillance of the incident captured by one of the security cameras at the restaurant. Counterstatement, ¶ 74[3].

• Plaintiff admits that the video confirmed that Mr. Franzo appears on the video just as Plaintiff is approaching the bar area occupied by the patron, and he points towards Plaintiff and the patron at the bar. Counterstatement, ¶ 77.

• Plaintiff admits that the day after the incident, Director of Human Resources Operations Maria Lavides called Plaintiff to discuss Marriott's investigation and keep her informed. Counterstatement, ¶ 83.

• Plaintiff admits Marriott accommodated her request for two days off from work,

---

[3] Plaintiff "disputed" Paragraph 74 of Defendant's statement of facts, but did not cite to the record to dispute the assertion that Marriott reviewed the video surveillance.

despite having no available paid time off. Counterstatement, ¶ 86.

- Plaintiff admits when she returned to work on September 25, 2017, she promptly met with her union representative, Marie Richard, the Hotel Manager, Sean Cassidy, and Ms. Lavides, at which time they all viewed the video together. Counterstatement, ¶ 88.

- Plaintiff admits that Ms. Lavides provided Ms. Richard with a copy of the security report and the video, but Plaintiff never asked the union for a copy of the video. Counterstatement, ¶ 89, 90.

- Plaintiff admits that she never followed up with the union to pursue the matter further. Counterstatement, ¶ 91.

- Plaintiff admits that approximately two weeks after the incident, on October 3, 2017, Marriott opened a formal Ethics Point investigation. Counterstatement, ¶ 96.[4] Specifically, the investigator noted that "Maria [Lavides] did review camera footage and cannot confirm that the guest groped [Plaintiff]." *Id.*

- Plaintiff admits that, in response to Plaintiff's complaint, Marriott installed a panic button for associates to use to quickly call security in case of any incident which warrants additional assistance. Counterstatement, ¶ 99.[5]

- Plaintiff admits she has made no allegations of sexual harassment following Marriott's investigation. Counterstatement, ¶ 100. She also admits that she is not aware of any other Marriott employees who were subjected to harassment by customers since September 18, 2017. Counterstatement, ¶ 101.

Given the above undisputed facts, it is clear that Defendant responded reasonably to Plaintiff's complaint. While Plaintiff might have preferred the Hotel to immediately remove the guest from the bar and ban him from returning, Title VII does not impose such a legal obligation on the Hotel. *See Flower*, 2000 WL 272187 at *9. Even if it did, however, the record is clear that Plaintiff never identified the patron to anybody before he left the bar. Accordingly, Plaintiff's own inaction prevented the Hotel from doing anything differently while the patron was still on the

---

[4] Plaintiff "disputed" Paragraph 96 of Defendant's statement of facts, but did not cite to the record to dispute the assertion that Marriott opened an Ethics Point Investigation.
[5] Plaintiff "disputed" Paragraph 99 of Defendant's statement of facts, but did not cite to the record to dispute the assertion that Marriott installed panic buttons.

premises. And while Plaintiff might quibble with the functionality of the panic buttons the Hotel installed in the bar area in response to her complaint, she cannot dispute that the Hotel's remedial measures have been effective, as she has not suffered any further incidents of harassment since September 18, 2017, nor is she aware of anyone else who has.

For these reasons, and those set forth in Defendant's initial moving papers, Plaintiff's hostile work environment claim under Title VII should be dismissed with prejudice.

## II.   PLAINTIFF'S TITLE VII RETALIATION CLAIM SHOULD BE DISMISSED

### A.   Plaintiff has Failed to Make a *Prima Facie* Claim of Retaliation Under Title VII.

Defendant's motion for summary judgment should be granted with respect to Plaintiff's Title VII retaliation claim, because plaintiff cannot satisfy the first *or* fourth elements of her *prima facie* case.

#### 1.   *Plaintiff did not Engage in Protected Activity*

Contrary to Plaintiff's arguments, she has not engaged in protected activity under the law. "In order to qualify as a protected activity, a plaintiff must have complained not just that some discrimination occurred in the course of the plaintiff's employment but that the discrimination was related to an 'employment practice.'" *Melendez v. Cty. of Westchester*, No. 17-CV-9637 (NSR), 2021 WL 467085, at *10 (S.D.N.Y. Feb. 8, 2021) (*citing Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)). The plaintiff's opposition must be "directed at an unlawful employment practice of [the] employer." *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999). The plaintiff cannot complain that she is being treated unfairly because of a protected category with nothing more. *See Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 686 (S.D.N.Y. 2018) (holding that the plaintiff's complaints

to her employer that her co-workers mistreated Hasidic visitors was not protected activity under Title VII and cannot form the basis of a retaliation claim).

As set forth in Defendant's moving papers, Plaintiff's retaliation claim is premised on her not receiving a bartender position that was filled in July, 2018. Plaintiff appears to argue that she engaged in protected activity by complaining about an alleged hostile work environment dating back to September, 2017. Plaintiff, however, fails to establish that Defendant had any discriminatory policies or practices. The Second Circuit has made clear that Plaintiff cannot rely upon her complaint of sexual harassment to establish her retaliation claim, without making a complaint directed at "an unlawful employment practice." *Wimmer*, 176 F.3d at 135.

Furthermore, this Court has concluded that "a complaint that a non-employee discriminated against a plaintiff is similarly not a complaint about an employment practice unless the plaintiff provides some evidence to impute the discrimination by the non-employee to the employer." *Melendez*, 2021 WL 467085, at *10. "[T]o fall within Title VII's protection, ***an employee's opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual.*" *Id.* (emphasis added) (internal quotation omitted) (citing *Braham v. N.Y. Unified Court System,* No. 94 Civ. 2193, 1998 WL 107117, at *3 (S.D.N.Y. Mar. 11, 1998)). Stated differently, "[t]o satisfy the first element in a prima facie case of retaliation, a plaintiff must show sufficient facts to impute the actions of the non-employee to her employer." *Flower*, 2000 WL 272187 at *10; *see also Folkerson v. Circus Circus Enterprises, Inc.*, 107 F.3d 754, 756 (9th Cir. 1997) (finding that the plaintiff, a casino employee, had failed to show any facts which suggested that the defendant, the casino, ratified or acquiesced in the casino patron's alleged sexual harassment, and could not establish that she engaged in protected activity).

Here, as set forth at length in *Point I.C.*, *supra*, Plaintiff concedes that Marriott took remedial action in response to the patron's alleged conduct in September, 2017. Accordingly, the patron's conduct cannot be imputed to the Hotel. Plaintiff, therefore, cannot establish that she engaged in any protected activity under the law, and, as a result, her retaliation claim should be dismissed.

### 2.    Plaintiff Cannot Demonstrate Causation

Despite Plaintiff's arguments in her opposition, although "temporal proximity can demonstrate a causal nexus . . . . Where timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise." *Melendez*, 2021 WL 467085, at *11 (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001)). Plaintiff's only basis to establish causation is the time between her sexual harassment complaint and her failure to receive the bartender position, which alone does not raise an inference of retaliation.

In a further attempt to establish this prong of her *prima facie* claim, Plaintiff makes the disingenuous argument that only six months elapsed between the two events. *See* Opp. Brief, p. 18 ("Ball complained about the hostile work environment in October.  In May[,] Defendant passed her over for the bartender position."). To the contrary, the undisputed facts demonstrate a ten month period elapsed between Plaintiff complaining about the patron's conduct and Defendant hiring a different candidate for the bartender position. There can be no dispute from the record that Plaintiff complained on September 18, 2017, and Defendant hired Mr. Tapia for the bartender position on July 26, 2018 – ten months later. Counterstatement ¶ 120. This period of time is too attenuated to establish an inference of causation. *See Ragin v. E. Rampapo Cent. Sch. Dist.,* No. 05 CIV. 6496 (PGG), 2010 WL 1326779, at *31 (S.D.N.Y. Mar. 31, 2010), *aff'd*, 417 F. App'x 81 (2d Cir. 2011) (four months between plaintiff's protected activity and her employer's decision not

to promote too attenuated to establish causation for retaliation claim); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").

Plaintiff points to no other evidence in the record capable of tying the decision to hire Mr. Tapia for the bartender position to Plaintiff's September 18, 2017 complaint. In fact, Plaintiff admits Chris Miller devised a written test which would determine who would be the new bartender. Counterstatement, ¶ 113.[6] Plaintiff further admits Sean Cassidy's employment with the Hotel ended on June 15, 2017. Counterstatement, ¶ 117. Mr. Cassidy was the only person that was involved in both the Hotel's response to the September 18, 2017 incident and the initial stages of the hiring process for the new bartender. Plaintiff also admits Mr. Cassidy's departure in June, 2017 was part of a broader change in the upper management at the Hotel.  Counterstatement, ¶ 118. And she admitted in a Facebook post on July 1, 2018, that the new Hotel Manager, General Manager, and HR director all "want to be involved in choosing the goddamn bartender…" Counterstatement, ¶ 119. Thus, the undisputed facts establish that there was no causal link between the decision to hire Mr. Tapia on July 26, 2018 and her September 18, 2017 complaint, and, therefore, Plaintiff's *prima facie* case must fail.

**B.**       **Plaintiff Cannot Demonstrate Pretext.**

Assuming *arguendo* that Plaintiff could establish a *prima facie* case of retaliation, which she cannot, Defendant came forward with a non-retaliatory reason for Plaintiff's failure to get the bartender job, which Plaintiff has failed to establish is pretext. *Leifer v. N.Y. State Div. of Parole*, 391 F. App'x 32, 34 (2d Cir. 2010). In proving that the defendant's proffered reason was

---

[6] Plaintiff "disputed" Paragraph 113 of Defendant's statement of facts, but did not cite to the record to dispute the assertion that Mr. Miller, Ms. Love, and Mr. Cassidy met to discuss the hiring process for the bartender and agreed that Mr. Miller would create an objective written test.

pretextual, the plaintiff needs to do more than "create a 'weak issue of fact as to whether the employer's reason was untrue.'" *Silverman v. City of New York*, 64 F. App'x 799, 800–01 (2d Cir. 2003) (quotation omitted); *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519 (1993) ("It is not enough . . . to dis believe the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."). This requires a case-by-case approach, "with a court examining the entire record to determine whether the plaintiff could satisfy [her] 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 469–70 (2d Cir. 2001) (quoting *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

In her opposition brief, Plaintiff makes a last ditch effort to salvage her retaliation claim by arguing that Defendant's stated reason for Plaintiff not receiving the bartender position was pretext because Defendant's written examination was "completely flawed." *See* Opp. Brief, p. 18. Plaintiff first claims that Defendant "failed to give credit to everyone for a correct answer regarding whether Wild Turkey was a bourbon." *See* Opp. Brief, p. 18. Assuming Plaintiff's argument is true, Plaintiff conceded that Defendant failed to give credit to **everyone** for the correct answer, which would not result in any change to the outcome of the test results. Similarly, both Plaintiff and Tapia were given the same credit for their answers with respect to Chambord, undermining any claim that the scoring favored Tapia over Plaintiff. See Counterstatement ¶ 115. At best, therefore, this indicates a benign mistake in grading that had absolutely no impact on Plaintiff's test score.

Plaintiff further claims that "Defendant failed to give Ball [credit] for a correct answer regarding the ingredients for whiskey sour." *See* Opp. Brief, p. 18-19. Notably, question 19 of

Plaintiff's exam[7] asked: "What is the recipe for a Whiskey sour?" *See* 56.1 Stm. ¶ 115, Miller Decl., ¶ 9, Ex. B (Marriott 000458 – 000462). The options included:

> A. 1 ounce whiskey and 2 ounces of sour mix;
>
> B. 2 ounces of whiskey and sour mix;
>
> C. 2 ounces of whiskey and 1 ounce of peach pure; and
>
> D. 1 ounce of whiskey and sweeten lime juice topped with orange juice.

*See id.* Instead of answering the multiple choice question, Plaintiff handwrote: "1 ½ oz & sour" and refused to select an answer from the options provided on the written test. *See id.* Plaintiff cannot now argue that Defendant should have given her credit for her own made-up answer, after she failed to answer the multiple choice question. Clearly, if applicants were able to "write in" their own answers, this would undermine any attempt at standardized scoring and defeat the purpose of an objective test.

Even if Plaintiff can establish that Defendant's written exam was flawed, which she cannot, she has failed to point to any evidence that Defendant's stated reason was a pretext for retaliation. There is zero evidence in the record indicating that any scoring snafus – which had no impact on Tapia scoring higher than Plaintiff – somehow advanced Defendant's retaliatory motive.

"Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Heskin v. Insite Advertising, Inc.*, No. 03 Civ.2598 GBD AJP,

---

[7] Defendant created multiple versions of the written test, and the questions were in a different order for each version.  All of the tests provided the same questions.

2005 WL 407646 (S.D.N.Y. Feb. 22, 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49 (2000)). Here, Plaintiff's *prima facie* retaliation claim is extremely weak, and she has not come forward with probative evidence that Defendant's non-retaliatory reason for not hiring her for the bartender position was pretextual. Accordingly, the Court should grant Defendant's motion for summary judgment, and dismiss Plaintiff's retaliation claim with prejudice.

Dated: January 18, 2022
      Berkeley Heights, New Jersey

FORD HARRISON LLP

      */s/ Keya C. Denner*
Keya C. Denner, Esq.
Timothy M. Barbetta, Esq.
300 Connell Drive, Suite 4100
Berkeley Heights, New Jersey 07922
Tel: (973) 646-7308
Fax: (973) 646-7301
*Attorneys for Defendant*